[No. 6817.  Decided June 24, 1907.]

THE STATE OF WASHINGTON, *on the Relation of Mary M. Miller, Plaintiff*, v. ARTHUR E. GRIFFIN, *Judge of the Superior Court for King County, Respondent.*[1]

STATUTES—CONSTRUCTION.  Two acts passed at the same session of the legislature relating to the same subject-matter must be construed together.

EMINENT DOMAIN—PARTIES ENTITLED—FOREIGN CORPORATIONS—RAILROADS TOUCHING STATE—STATUTES—CONSTRUCTION.  Laws 1889-90, p. 525, § 3, relating to the right of railroads whose lines touch the state, which provides that such a corporation complying with the act shall have all the rights and privileges to extend its lines into the state that it would have had if it had been authorized so to do by filing articles of incorporation, in accordance with the general laws of the state (Code, 1881, § 2478), recognizes the legal right of a foreign corporation to construct lines in the state, although it had no line touching the state; and a general law subsequently taking effect (Laws 1889-90, p. 288) completely covering the latter subject-matter, would likewise authorize foreign corporations to construct lines in the state, although not coming within the provisions of the special act relating to the extension of lines touching the state.

Application for a writ of certiorari to review a judgment of the superior court for King county, Griffin, J., entered June 11, 1907, in condemnation proceedings, adjudging a public use and directing a jury to assess the damages.   Writ denied.

[1]Reported in 90 Pac. 661.

*Blaine, Tucker & Hyland,* for relator.
*Bogle, Hardin & Spooner,* for respondent.

CROW, J.—This is an original application for a writ of review. The Oregon and Washington Railroad Company, a foreign corporation, organized and existing under the laws of the state of Oregon, with power to construct and equip a line of railroad from Portland, Oregon, to Everett, Washington, filed its petition in the superior court of King county, to condemn a right of way for a tunnel beneath the surface of certain real estate, in the city of Seattle, belonging to the relator, Mary M. Miller. The petition, which is in usual form, alleges that the corporation has filed in the office of the secretary of state of Washington a duly certified copy of its articles of incorporation; that it has appointed a resident agent upon whom service of process may be had, and that it has in all respects complied with the laws of Washington regulating foreign corporations doing business in this state. The superior court entered an order adjudging a public use and directing that a jury be impaneled to assess damages.

The relator, Mary M. Miller, in support of her application for a writ of review, contends that the superior court erred in entering the order of condemnation and adjudging a public use, for the reason that the Oregon and Washington Railroad Company has no railroad constructed in this state; that it has no constructed railroad reaching to or intersecting the borders of this state; that it has no railroad in existence at all, and that there is no warrant in law authorizing it to condemn property in this state. In support of this position the relator relies upon § 3 of chapter 17, page 525, Laws 1889-90, being § 4305, Bal. Code, and § 7803, Pierce's Code, and contends that chapter 9, page 288, Laws of 1889-90, being § 4291 *et seq.*, Bal. Code, and § 7214 *et seq.*, Pierce's Code, does not apply to foreign railroad corporations. While it is shown that the Oregon and Washington Railroad Company has expended millions of dollars in acquiring its right of way in this

state, and is about to construct a line of road from Portland, Oregon, to Everett, Washington, it does not appear that it has any line of railroad now actually constructed either in the state of Oregon or the state of Washington. The relator contends that chapter 17, Laws of 1889-90, is a special act relating to foreign railroad corporations, prescribing the procedure under which they may enter this state and construct lines of road; that chapter 9, Laws of 1889-90, relating to foreign corporations doing business in this state, being a general act, does not apply to foreign railroad corporations, its provisions being controlled by the special act; in other words, that chapter 17, which the relator denominates a special act, provides the *only conditions* under which foreign railroad corporations may enter this state; that these provisions are exclusive, and that before the respondent is entitled to enter the state or exercise the right of eminent domain, it must first comply with the provisions of § 3 of chapter 17, by actually constructing its line to the borders of this state.

This contention cannot be sustained. Chapter 17, which expressed an emergency clause in its preamble, was received by the governor on March 28, 1890, the day on which the legislature adjourned *sine die*. It became a law without his approval, and under the emergency expressed in its preamble, took effect April 8, 1890. Chapter 9, Laws 1889-90, was approved by the governor, but having no emergency clause did not take effect until June 26, 1890. It thus appears that chapter 17 took effect some eighty days prior to chapter 9. These two acts passed at the same session of the legislature, and chapter 189 of the Code of 1881, hereinafter mentioned, all relate to the same subject-matter, are *in pari materia*, and must be construed together, so that, if possible, a proper and harmonious effect may be given to all of them during the respective periods of their being in force, although they contain no reference one to another, and were passed at different times. Lewis' Sutherland, Statutory Construction (2d ed.), § 443.

Section 3 of chapter 17, Laws of 1889-90, provides that, any railroad corporation chartered by or organized under the laws of the United States or of any state or territory, whose constructed railroad shall reach or intersect the boundary line of this state at any point, may extend its railroad into this state from any such point of intersection. It further provides that, before making any such extension, such corporation shall, by resolution entered in the records of its proceedings, designate the route of the proposed extension, the place from which it is to be constructed, its estimated length, the counties through which it will pass, and shall file a copy of such record, duly certified, in the office of the secretary of the state of Washington. These are the only preliminary acts required of a foreign railroad corporation, by § 3, as a condition precedent to the construction of an extension line in this state. Section 3 further provides that:

"Thereupon such corporation shall have all the rights and privileges to make such extension or build such branch and receive such aid thereto as it would have had had it been authorized so to do by articles of incorporation duly filed in accordance with the laws of this state."

This last clause indicates a recognition by the legislature of the legal right of a foreign railroad corporation to then enter this state, construct its line of road and transact business under some other existing law, by filing its articles of incorporation. Chapter 189, Code of 1881, § 2478 *et seq.*, relating to foreign corporations, was then in full force and effect. Under this chapter any foreign corporation (which included a railroad corporation) had authority to enter this state and do business upon compliance with its provisions. This chapter remained in force concurrently with chapter 17 of the Laws of 1889-90, until June 26, 1890, when chapter 9 of the Laws of 1889-90 took effect. Chapter 189 of the Code of 1881 having remained in effect for that period, chapter 17 must, if possible, be construed in harmony therewith, as well as with said chapter 9 after it took effect. We

conclude that, by enacting said chapter 17, the legislature intended to permit a foreign railroad corporation, having a constructed line of railroad reaching to and intersecting the borders of this state, to enter this state and do business on the terms therein named, and without compliance with chapter 189, Code of 1881, then in effect, relating to foreign corporations; but that it did not deprive any such foreign corporation of its right to enter this state to construct a line of road, and transact business, upon full compliance with chapter 189, Code of 1881, and to do so without having any constructed line of road reaching to or intersecting the borders of this state.   It is true that this construction of chapter 17, Laws 1889-90, which we see no way to avoid, may be such as to cause its validity to become questionable under § 7, art. 12, of the state constitution.   However, that question is not now before us, and will not be passed upon.   When chapter 9, Laws 1889-90, went into effect, it completely covered the subject-matter of chapter 189 of the Code of 1881, and we are of the opinion that, under said chapter 9, a foreign railroad corporation is entitled to come into this state upon full compliance therewith, build its lines of road, transact business, and exercise the right of eminent domain, without regard to any line of road theretofore constructed.

The application for writ of review is denied.

HADLEY, C. J., MOUNT, and ROOT, JJ., concur.

FULLERTON, J., concurs in the result.