[No. 9938.   Department Two.   April 5, 1912.]

HEWITT-LEA LUMBER COMPANY, *Respondent*, v.
W. R. CHESLEY *et al.*, *Appellants*.[1]

MARITIME LIENS—STATUTES—IMPLIED REPEAL. Rem. & Bal. Code, § 1133, providing for duplicate statements to the owners of all material or supplies for which a mechanics' lien is claimed, did not impliedly repeal the provisions of Id., §§ 1182, 1183, governing the subject of mechanics' liens on boats and vessels; repeals by implication not being favored, and the later act not being a complete law on the subject.

MARITIME LIENS—MATERIALS—CLAIMS—DUPLICATE STATEMENTS—STATUTES—CONSTRUCTION. Rem. & Bal. Code, § 1133, requiring duplicate statements of materials and supplies to be delivered to the owners of all structures, including boats and vessels, at the time the materials or supplies are delivered to any person or contractor, as a prerequisite to a claim for a lien, has no application where the materials or supplies are delivered to an owner under a contract with him.

MARITIME LIENS — CLAIMS — FILING AND RECORDING—STATUTES—CONSTRUCTION. Under Rem. & Bal. Code, §§ 1182, 1183, a lien for lumber for the construction of a barge may be claimed and enforced without the filing or recording of any notice or claim.

Appeal from a judgment of the superior court for King county, Tallman, J., entered April 19, 1911, in favor of the plaintiff, after a trial on the merits before the court, in an action to foreclose a lien on a barge.   Affirmed.

*William H. Gorham*, for appellants.
*Alexander & Bundy*, for respondent.

CROW, J.—Action by Hewitt-Lea Lumber Company, a corporation, against Philip D. Sloan, W. R. Chesley and J. W. Kerry, to establish and foreclose a lien on a barge. From a decree in plaintiff's favor, the defendants Chesley and Kerry have appealed.

The amended complaint in substance alleged that, between February 7 and February 26, 1910, respondent sold and de-

[1]Reported in 122 Pac. 993.

livered lumber and materials to the defendant Philip D. Sloan, at his shipyard in Seattle, to be used, and which were used, by Sloan in the construction of a barge known as "Pacific No. 8;" that the lumber and materials were of the reasonable value of $1,677.69, of which $547.69 was due and unpaid; that Sloan was the owner of, and in the possession of the barge when the materials were sold and delivered; that the barge, at the time of filing the amended complaint, was in the possession of a receiver appointed by the trial court in this action, and that Chesley and Kerry had or claimed some interest in or to the barge, subject and subsequent to respondent's lien. The defendant Sloan was served with summons, but defaulted. Appellants, answering the amended complaint, admitted that the barge was constructed by Sloan; that it was in the possession of the receiver; that they claimed some interest or title in or to the barge; denied every other allegation of the amended complaint; and asked that the action be dismissed, that the receiver be discharged, and that the barge be delivered to them. On the trial, respondent, by competent evidence, sustained all the allegations of his complaint. No evidence was offered by appellants.

This action is prosecuted under Rem. & Bal. Code, §§ 1182 and 1183, which provide for liens and their foreclosure on steamers, vessels and boats for materials furnished and used in their construction and repair. Appellants' controlling contention is that so much of § 1182 as provides that all steamers, vessels, and boats are liable for material furnished in this state for their construction or repair, and which further provides that demands for the same constitute liens on such steamers, vessels, and boats is repealed by implication by ch. 45, Laws of 1909, page 71 (Rem. & Bal. Code, § 1133), entitled "An act relating to materialman's liens and the enforcement thereof." The act of 1909 contains but one section, which reads as follows:

"Every person furnishing material or supplies to be used in the construction, alteration or repair of any mining claim, building, wharf, steamer, vessel, boat, bridge, ditch, dyke, flume, tunnel, well, fence, machinery, railroad, street-railway, wagon road, aqueduct to create hydraulic power, or any other building or any other structure or mining claim or stone quarry, shall, at the time such material or supplies are delivered to any person or contractor, deliver or mail to the owner, or reputed owner, of the property, on, upon or about which said materials or supplies are to be used, a duplicate statement of all such materials or supplies delivered to any contractor or person to whom any such materials or supplies have been sold or delivered, and no materialmen's lien shall be filed or enforced unless the provisions of this act have been complied with."

It will be observed that this section includes steamers, vessels, and boats within its provisions, as well as all structures mentioned in Rem. & Bal. Code, § 1129, relating to liens of mechanics and materialmen. Calling attention to this fact, appellants contend that the act of 1909 thereby draws within its operation as subject to materialmen's liens, not only all structures mentioned in § 1129, but also all steamers, vessels, and boats mentioned in § 1182; that, by reason thereof, duplicate statements of materials furnished to be used in the construction of the barge should have been delivered or mailed to the owner of the barge, which was not done; that a claim of lien for the materials furnished should also have been filed and recorded as required by § 5 of ch. 21, Laws 1893, page 34 (Rem. & Bal. Code, § 1134), which was not done; that respondent was not entitled to any lien or the foreclosure thereof.

It is apparent that the act of 1909 was not intended to be complete legislation on the subject of liens of materialmen. On the contrary, its sole purpose was to require that every person furnishing materials to be used in the construction or repair of any of the structures therein named (including steamers, vessels and boats) should, at the time of the delivery of such material to any person or contractor, deliver or mail

duplicate statements thereof to the owner or reputed owner of the property. It did not repeal or amend any existing laws pertaining to liens, but simply imposed this additional burden upon materialmen who intend to assert any such liens. In *Spokane Grain & Fuel Co. v. Lyttaker*, 59 Wash. 76, 109 Pac. 316, the validity of the act of 1909 was assailed, the contention being then made that it violated § 37 of art. 2 of the state constitution, which declares that "no act shall ever be revised or amended by mere reference to its title, but the act revised or the section amended shall be set forth at full length;" but this court, after quoting at length from numerous authorities, said:

"It seems to us the foregoing authorities demonstrate that the act in question is not violative of the constitutional provision under consideration. Nearly every legislative act of a general nature changes or modifies some existing statute, either directly or by implication, and as said by the court in *Ex parte Pollard, supra,* 'Whether an amendatory or an original act should be employed is a matter of legislative judgment and discretion which the courts cannot control.' . . . So long as a legislative act is complete in itself, and has a sufficient title, it satisfies the requirements of the constitution, whether it contains much or little. The legislature may embody all legislation relating to a given subject in a single act, or it may cover the subject by a succession of acts. This is entirely a matter of legislative discretion over which we can assume no control."

The only effect of the act of 1909 upon claims for liens for materials furnished to be used in the construction or repair of steamers, vessels, or boats, was to require a compliance with its terms relative to delivering or mailing duplicate statements.

"Where two legislative acts are repugnant to, or in conflict with, each other, the one last passed, being the latest expression of the legislative will, must govern, although it contains no repealing clause. But it is not sufficient to establish such repeal that the subsequent law covers some, or even all, of the cases provided for by the prior statute, since it may be

merely affirmative, or cumulative, or auxiliary." 36 Cyc. 1073.

"When two statutes cover, in whole or in part, the same subject-matter, and are not absolutely irreconcilable, no purpose of repeal being clearly shown, the court, if possible, will give effect to both. Where, however, a later act covers the whole subject of earlier acts and embraces new provisions, and plainly shows that it was intended, not only as a substitute for the earlier acts, but to cover the whole subject then considered by the legislature, and to prescribe the only rules in respect thereto, it operates as a repeal of all former statutes relating to such subject-matter, even if the former acts are not in all respects repugnant to the new act. But in order to effect such repeal by implication it must appear that the subsequent statute covered the whole subject-matter of the former one, and was intended as a substitute for it." 36 Cyc. 1077.

The acts in question are not repugnant or in conflict, nor does the later act of 1909 purport to cover the entire subject-matter of materialmen's liens. Repeals by implication are not favored by the courts, and we cannot conclude there has been any repeal of § 1182, even to the extent for which appellants contend.

The question then arises whether in this action respondent was required to deliver or mail duplicate statements to the owner of the barge, which the allegations of the amended complaint and the evidence fail to show was done. It does appear without dispute that Sloan, to whom the materials were sold and delivered, was at the time the owner of and in the possession of the barge. This court, in construing the act of 1909, has held that a materialman, who delivers material to an owner under contract with him, need not deliver or mail duplicate statements to such owner. *Rieflin v. Grafton,* 63 Wash. 387, 115 Pac. 851; *Architectural Decorating Co. v. Nicklason,* 66 Wash. 198, 119 Pac. 177. In the case last cited, we said:

"The statute covers a situation where three persons are involved, the one who furnished material, the one to whom

the material is furnished, and the owner of the building for which they are furnished. The owner has no contractual relation with the first person, and has no means of knowing what materials may be furnished to the second person upon the faith and credit of the building, except as he receives notice through his duplicate bills. Upon receipt of these, the owner is in a position to protect himself against his contractor and the materialman, by checking up the contractor and the materials claimed to be furnished. This is the plain purpose of the statute. Where the owner contracts directly for material, he requires no notice outside of his contract, to protect himself. The findings make appellant a contractor and not a materialman, dealing with the owner. The contract was of itself a statement of the materials furnished, and none other was necessary."

From what has been heretofore said, it necessarily follows that appellants' contention to the effect that respondent was required to file and record a claim for lien before it could obtain and foreclose such lien cannot be sustained. Respondent was entitled to proceed as it did under the provisions of Rem. & Bal. Code, §§ 1182 and 1183, which do not require the filing or recording of a claim for lien upon the barge. *Washington Iron Works Co. v. Jensen,* 3 Wash. 584, 28 Pac. 1019.

The judgment is affirmed.

DUNBAR, C. J., MORRIS, and ELLIS, JJ., concur.