[No. 12080. *En Banc.* September 24, 1915.]

BRACE & HERGERT MILL COMPANY *et al.*, *Respondents*, v.
A. S. BURBANK *et al.*, *Appellants.*[1]

MECHANICS' LIENS—RIGHT TO—DEFENSES—DECLARATION OF HOME-
STEAD. After the right to a mechanics' lien had fully accrued, the
owner cannot defeat the same by filing a declaration of homestead
upon lands not theretofore constituting a homestead; and it is im-
material whether the lien notice was filed before or after the claim
of homestead; since there would be an estoppel in favor of the lienors
analogous to that of innocent purchasers for value.

HOMESTEAD—SELECTION—NECESSITY. There is no homestead right
in any specific property until it has been selected, as required by
Rem. & Bal. Code, §§ 558, 559, 560, which provide that, in order to
select a homestead, a declaration of homestead must be acknowledged
and filed of record in the county auditor's office, stating that the
party making it is the head of a family and is residing upon, or has
purchased it intending to reside upon, the property, describing it,
and stating the actual cash value.

MECHANICS' LIENS—FORECLOSURE—NECESSARY PARTIES—CONTRACT-
OR—WAIVER. It is not error to proceed to final judgment in a lien
foreclosure case, without having made the principal contractor a
party to the action, where the objection of want of necessary parties
was first made at the close of the trial.

SAME—NOTICE OF LIEN—ADDRESS. Under 3 Rem. & Bal. Code,
§ 1133, requiring a materialman, in order to claim a lien, to mail a
notice to the owner of the furnishing of the materials to any con-
tractor, it is immaterial that the notice mailed to the owner gave
an erroneous address, where the post office authorities corrected the
address and the notice was received by the owner in due course.

SAME—NOTICE—DESCRIPTION OF PROPERTY. Under 3 Rem. & Bal.
Code, § 1133, requiring a materialman to give notice to the owner
of the furnishing of material to a contractor, a notice sufficiently
describes the property, where it gives the official name of the lot,
block, and addition, and the name of the contractor constructing a
building on such lot for the owner, although it fails to state the
name of the city; and the same would be true of a notice properly
designating the property by street and street number.

SAME—NOTICE TO OWNER—MATERIALS FURNISHED TO OWNER. 3
Rem. & Bal. Code, § 1133, requiring notice of the furnishing of ma-
terials to any contractor or agent to be given to the owner, does not

[1]Reported in 151 Pac. 803.

require such notice where the materials were furnished upon the order of the owner himself.

SAME—NOTICE TO OWNER—SUFFICIENCY. 3 Rem. & Bal. Code, § 1133, requiring any person furnishing material to a contractor, in order to claim a lien, to give notice to the owner of the furnishing of the materials, is not complied with by a notice given by a third person, notifying the owner that the materials "had been ordered" by the party claiming the lien, there being nothing in the notice indicating that it was given in the interest of the claimant.

SAME—NOTICE OF LIEN—SIGNATURE. Where a notice of mechanics' lien, signed by W. & R. as attorneys for the claimant, was acknowledged by the claimant who signed the verification at the foot of the notice following the signatures of his attorneys, there was a sufficient signing by the claimant, as prescribed by the forms embodied in Rem. & Bal. Code, § 1134.

SAME—NOTICE OF LIEN—DEFECTS—AMENDMENTS. A mechanics' lien notice correctly describing the lot upon which the house was situated, and claiming a lien "upon said property" is amendable to extend the claim of lien to the house; in view of Rem. & Bal. Code, § 1134, allowing lien notices to be amended as between the parties.

SAME—NOTICE OF LIEN—AMENDMENT TO CONFORM TO PROOF—OBJECTIONS—WAIVER. In an action to foreclose a mechanics' lien, in which evidence was received without objection that the claimant performed labor in the construction of the house entitling him to a lien upon the house and lot, his notice of lien, which was defective in not claiming a lien upon the house, will on appeal be deemed amended to conform to the proof, where the only objection at the trial was as "to the sufficiency of the description and the signature."

SAME—ITEMS SUBJECT—CARTAGE. A claim for lien for materials to be furnished upon the premises may properly include the cost of cartage.

COSTS—ON APPEAL—MECHANICS' LIENS—INTEREST. In an action to foreclose mechanics' liens, technical error in allowing interest from the time of furnishing the material, instead of from the time of filing the lien notices, amounting to slight sums varying from a few cents to $3, will not entitle appellants to costs on appeal, where they failed, upon ample opportunity, to call the trial court's attention to the error before final decree.

COSTS—ON APPEAL—ASSIGNMENT OF ERROR—REPLY BRIEF. Error in the final decree of foreclosure of lien notices in ordering the purchaser at the sale to be let into the immediate possession of premises constituting the appellant's homestead, will not entitle appellants to costs on appeal, where the error was not claimed until the filing of their reply brief.

MECHANICS' LIENS—FORECLOSURE—PERSONAL JUDGMENT. In an action to foreclose a mechanics' lien, personal judgment may be given against the owners for materials furnished at their own instance.

SAME—FORECLOSURE—DECREE—INTEREST. In an action to foreclose mechanics' liens, interest may be allowed only from the time of filing the claims.

SAME—DECREE—POSSESSION OF PREMISES—HOMESTEAD. In an action to foreclose mechanics' liens upon a homestead, it is error to provide in the decree that immediate possession of the premises shall be delivered to the purchaser at the sale.

Appeal from a judgment of the superior court for King county, Smith, J., entered January 30, 1914, in favor of the plaintiffs, in an action to foreclose mechanics' liens, tried to the court. Modified.

*Hamlin & Meier*, for appellants.

*Myers & Johnstone*, for respondents Brace & Hergert Mill Company and Canal Lumber Company.

*Willett & Oleson*, for respondent Anderson & Wheaton.

*Alfred H. Lundin*, for respondent Dull Lumber & Fuel Company.

*Henry W. Lung* and *George W. Bright*, for respondent Thorn Plumbing Company.

*Longfellow & Fitzpatrick*, for respondent Mitchell.

*Elias A. Wright* and *Sam A. Wright*, for respondent Commercial Sash & Door Company.

*H. D. Allison*, for respondent Green Lake Hardware & Furniture Company.

*Weter & Roberts*, for respondent Chandler.

*Thorwald Siegfried*, for respondent Wessels.

*E. H. Kohlhase*, for respondent Slocum.

PARKER, J.—This action was commenced by the plaintiff Brace & Hergert Mill Company, seeking foreclosure of a lien claimed by it upon a house and lot owned by the defendants in Seattle, for material furnished and used in the con-

struction of the house. After the commencement of the action, others became parties thereto by intervention, all of whom also seek foreclosure of their liens claimed separately by them upon the house and lot for material furnished for, and used in the construction of, the house and for labor performed thereon. The trial resulted in a decree foreclosing eleven of the claimed liens as prayed for. The defendants have appealed therefrom, claiming error in the decision of the trial court as to each of the claimed liens foreclosed.

On March 12, 1913, the defendant A. S. Burbank entered into a contract with the Modern Bungalow Company by which it was to furnish the material for and construct a dwelling house upon a lot owned by him and his wife, Ellen Burbank, as their community property, for which the Bungalow Company was to be paid $3,750. The construction of the house was accordingly proceeded with during the spring and summer months of that year, in the course of which the Bungalow Company incurred indebtedness to the several lien claimants for materials furnished and used in the construction of the house and for labor performed thereon. The amount of such indebtedness so incurred and owing to each claimant is not in dispute. The material so furnished and used in the construction of the house and the labor so furnished thereon was all furnished, used and performed prior to the first day of August, 1913, so that not later than that date each of the claimants had an accrued right to a lien upon the house and lot, if at all.

On September 11, 1913, appellant A. S. Burbank duly executed, and caused to be recorded in the office of the auditor of King county, a declaration of homestead, in pursuance of Rem. & Bal. Code, §§ 559, 560 (P. C. 223 §§ 61, 63), claiming the house and lot as a homestead. Each of the lien claimants filed for record in the office of the auditor of King county notice of claim of lien against the premises within the time prescribed by law following the furnishing of the materials and the performing of the labor, under Rem.

& Bal. Code, § 1134 (P. C. 309 § 63). Some of the lien no-
tices were so filed before the filing and recording of appellants'
declaration of homestead, and some of them were filed there-
after, but all of them were filed within the time prescribed
by law as a prerequisite to the commencement of actions to
foreclose such liens. The liens were claimed and their fore-
closure sought because of the default of the Bungalow Com-
pany, as contractor, to pay for the materials so furnished
and work so performed. These facts are undisputed and are
common to all of the claims here involved. Other facts will
be noticed in our discussion of the several questions presented.

Counsel for appellants contend that, to allow foreclosure
of these liens and sale of the premises in satisfaction thereof,
would be in violation of their constitutional right of. home-
stead as guaranteed by article 19 of our state constitution,
reading as follows:

"The legislature shall protect by law from forced sale a
certain portion of the homestead and other property of all
heads of families."

The argument is, in substance, that the legislature having
defined the homestead, provided the manner of its selection
and for its exemption from forced sale, in general terms by
the act of 1895, in accordance with this constitutional pro-
vision (Rem. & Bal. Code, § 528 et seq. [P. C. 223 § 1],
Laws of 1895, chap. 64, page 109), no exception can be
made to such exemption, even though specified in the same
act providing for the exemption, and even though the con-
stitutional provision above quoted is not self-executing.
Upon this ground it is insisted that the exception to the gen-
eral exemption of the homestead by § 5 of that act, being
Rem. & Bal. Code, § 533 (P. C. 223 § 19), is unconstitu-
tional. That section reads:

"The homestead is subject to execution or forced sale in
satisfaction of judgments obtained: 1. On debts secured by
mechanic's, laborer's, materialmen's or vendor's liens upon
the premises. 2. On debts secured by mortgages on the

premises executed and acknowledged by the husband and wife or by any unmarried claimant."

Numerous decisions of the courts have been called to our attention by counsel for appellants touching the power of the legislature to make exceptions in favor of certain classes of creditors under constitutional provisions relating to homestead exemptions, some of which are self-executing and some of which, like ours, are not self-executing. However, in the light of the fact that all of the lien rights here involved accrued before the filing of appellants' declaration of homestead, we do not view the cause as presenting, necessary for decision here, the broad constitutional question suggested by counsel for appellants; in any event, no farther than to inquire whether any constitutional right of the appellants would be violated by a judicial sale of their present homestead to satisfy lien rights which had fully accrued against it before the filing of their declaration of homestead. The real question is, Can appellants, under the guise of exercising their homestead right, defeat a lien right against the land constituting their present homestead accruing at a time when such land was not their homestead—that is, before they had filed any declaration claiming it as a homestead? We are quite unable to understand that appellants' homestead right, though it be regarded as wholly a constitutional right, can be invoked to defeat prior lien rights. Whether such homestead right when once attached to specific land would prevent lien rights attaching thereto thereafter, is, we think, quite another question.

In *Parsons v. Pearson,* 9 Wash. 48, 36 Pac. 974, this court held that a mechanics' lien accruing against premises at a time when the owner was not living thereon, though intending to claim such land as a homestead, could not be defeated by a claim of homestead exemption thereafter made. That was before the act of 1895 was passed, and when there was no statutory method for identifying or claiming a homestead, the then existing statute allowing a claim of its ex-

emption made at any time before sale on execution.  At page
51 of the opinion, Judge Scott, speaking for the court, ob-
served:

"Although the respondents at the time the contract was
entered into intended to claim this particular real estate as
a homestead, and did claim it as such, there was nothing to
prevent them from thereafter changing their minds; and to
hold that the right to a lien under the statute will not obtain
against a homestead claim in this state might allow the own-
ers to defeat such a right although such real estate was not
a homestead, and they did not intend to claim it as one at
the time the contract for the erection of a building thereon
was entered into, for under the law they are entitled to select
a homestead at any time before sale.

"It is true § 1404 provides that such selection must em-
brace the dwelling house in which one or both of the claim-
ants reside, but they may be possessed of more than one
dwelling house, and a change of residence is easily made.
Homestead rights are generally favored in the law, and ought
to be so favored, but to render a homestead claim paramount
in all cases to a right to a mechanic's or a materialman's lien
it seems as though there should be some way provided for se-
lecting it in advance of the contract, to the end that all per-
sons may be notified thereof, as otherwise the equities may
be in favor of other lien claimants.  In this case appellant
undoubtedly has the most meritorious claim, for it was only
as the result of his labor and the expenditure of his money
for the materials therefor that a house was erected on the
lots aforesaid in which the respondents could reside, and by
which it could be rendered of any benefit to them as a home-
stead."

In *Olson v. Goodsell*, 56 Wash. 251, 105 Pac. 463, de-
cided after the passage of the act of 1895, it was held that a
mechanics' lien filed prior to the declaration of homestead
upon the same premises was not defeated by such claimed
homestead exemption.  We there said:

"The trial court erroneously held that such a declaration
of homestead destroyed appellant's lien and prevented its
foreclosure.  The lien having attached before the declara-

tion of homestead was made, appellant was entitled to a fore-
closure decree.''

These decisions seem to be decisive against appellants upon
this branch of the case. However, there may be some room
for argument that there is a distinction to be made between
the right of the lien claimant before and after the filing of
his lien notice with the county auditor. The case last above
cited was one wherein the lien notice was filed before the dec-
laration of homestead. But we think there is no such dis-
tinction in principle, so far as the lien claimant's rights are
concerned, where his lien notice has been timely filed with the
county auditor, following the furnishing of the material or
the performance of the labor, within the time prescribed by
law, as it was so filed by each of these claimants. Mani-
festly, at the conclusion of the furnishing of the material
and the performance of the labor by each of these claimants,
his right to a lien had fully accrued; and the fact that notice
thereof was not filed for record in the office of the county
auditor by some of these lien claimants until after appel-
lants' declaration of homestead was filed therein did not les-
sen or impair in the least the right of such lien claimants,
since their notices of liens were in fact filed within the time
prescribed by law following the furnishing of the material
and the performance of the work, though their lien rights
might have been lost by a failure to so timely file their lien
notices. Appellants parted with nothing in the acquisition
of their homestead right when they filed their declaration of
homestead, so that they are not in any sense in the position
of innocent purchasers for value, even if such a position
would be of any avail to them. These lien claimants are in
a position analogous to that of innocent purchasers for
value. They furnished materials and performed labor upon
the premises at a time *when it was not a homestead*, and at
a time when, by the plain terms of the lien laws of the state,
they were entitled to liens thereon to secure payment for the
materials and labor so furnished by them, unimpaired by

then existing homestead exemptions in favor of appellants, so far as the particular premises involved are concerned. These claimants parted with the value of their material and labor so furnished in the acquisition of their lien rights. It seems quite plain to us that they are entitled to all the equities and all the benefits of estoppel as against appellants, as innocent purchasers of the premises for value would be entitled to. No decisions of other jurisdictions have come to our notice touching this exact problem, though the decisions in *Kelly v. Dill,* 23 Minn. 435, and *Hawthorne v. Smith,* 3 Nev. 182, 93 Am. Dec. 397, may be regarded of some interest in this connection, which decisions deal with the superiority of attachments levied upon land over homestead exemptions prior to the same becoming a homestead. These decisions are apparently in direct conflict upon that question. However, they are not of material aid here, in view of the fact that an attachment creditor is not an innocent purchaser for value in that he parts with no consideration in acquiring his attachment rights.

Some contention is made rested upon the general rule that exemptions may be claimed at any time prior to execution. While this rule is applicable to sales under executions to satisfy personal judgments which are general liens, we think it has no application to the sale of property to satisfy specific liens against such property, the foreclosure and sale in such cases being *in rem.* Indeed, an exemption is necessarily inconsistent with a valid existing lien against specific property.

Are we correct in assuming that the homestead right of appellants in this specific property did not come into existence until the filing of the declaration thereby selecting it as such? It is conceded that the premises were unoccupied until the construction of this house upon it, so that appellants, of course, had not acquired a homestead right therein by occupancy prior to the homestead act of 1895 (Laws 1895, ch. 64, pp. 113, 114). Sections 30, 31 and 32 of

that act, being §§ 558, 559 and 560, Rem. & Bal. Code
(P. C. 223 §§ 59, 60, 63), are as follows:

"§ 558.   In order to select a homestead the husband or
other head of a family, or in case the husband has not made
such selection, the wife must execute and acknowledge, in
the same manner as a grant of real property is acknowledged,
a declaration of homestead, and file the same for record."

"§ 559.   The declaration of homestead must contain:

"(1)   A statement showing that the person making it is
the head of a family; or when the declaration is made by the
wife, showing that her husband has not made such declara-
tion, and that she therefore makes the declaration for their
joint benefit;

"(2)   A statement that the person making it is residing
on the premises or has purchased the same for a homestead
and intends to reside thereon and claims them as a home-
stead;

"(3)   A description of the premises;

"(4)   An estimate of their actual cash value."

"§ 560.   The declaration must be recorded in the office of
the auditor of the county in which the land is situated."

The language of these sections renders it plain that there
is no homestead right in any specific property until it is se-
lected, and such selection evidenced in writing and recorded
as therein provided.   The views of this court expressed in
*Whitworth v. McKee*, 32 Wash. 83, 72 Pac. 1046, and *Don-
aldson v. Winningham*, 48 Wash. 374, 93 Pac. 534, 125 Am.
St. 937, are in harmony with this view.

We conclude that the lien rights of these claimants, ex-
cept as to one to be hereinafter noticed, are superior to ap-
pellants' claimed homestead right in the premises here in-
volved, and that the foreclosure of these liens will not de-
prive appellants of any right guaranteed by our constitu-
tion.   To hold otherwise would be in effect to take respond-
ent's property, to wit, their accrued lien right, and give it to
appellants to constitute a part of their homestead.   This
manifestly would come much nearer violating respondents'

constitutional rights than does our holding violate any constitutional right of appellants.

The Modern Bungalow Company, the contractor, though named in the complaint of some of the lien claimants as a defendant, was not served with summons, did not voluntarily appear in the action, and therefore did not become a party thereto. It is now contended by counsel for appellants that it was error on the part of the trial court to proceed to final judgment without the contractor being a party thereto. This contention is rested upon the ground that it was an indispensable party. This objection was first made at the close of all the evidence, when the cause was finally submitted to the court for final decision upon the merits. No personal judgment was awarded against the Bungalow Company, nor against appellants, except as to two of the lien claimants whose claims the trial court found were incurred at the instance of appellants themselves, so the proceeding was only *in rem* so far as any rights of the Bungalow Company are concerned. The following decisions of the court are called to our notice by counsel for appellants, which hold that the contractor is a necessary party to the foreclosure of a lien by those who have furnished such contractor with material or labor for the carrying on of his contract. *Sayre-Newton Lumber Co. v. Park*, 4 Colo. App. 482, 36 Pac. 445; *Kerns v. Flynn*, 51 Mich. 573, 17 N. W. 62; *Vreeland v. Ellsworth*, 71 Iowa 347, 32 N. W. 374. These decisions seem to proceed upon the theory that there must be a personal judgment against the contractor before any lien therefor can be established and foreclosed against the property of the owner, which latter right seems to be regarded as a sort of secondary alternative right. We do not so regard the lien right under our statute, which by express terms provides:

". . . every contractor, subcontractor, architect, builder or person having charge, of the construction, alteration or repair of any property subject to the lien as aforesaid, shall be held to be the agent of the owner for the purposes

of the establishment of the lien created by this chapter."
Rem. & Bal. Code, § 1129 (P. C. 309 § 53).

Manifestly the lien so created under our statute is not in
the least secondary to the personal claim which a contractor
himself incurs in causing material to be furnished or labor
to be performed. We are not prepared to say that the
owner, under some circumstances, might not rightfully in-
sist upon the contractor being made a defendant, but it is
not reversible error for the trial court to proceed to final
judgment of foreclosure, in the absence of such request until
the close of the trial. This view finds abundant support in
the authorities, and we think must necessarily be correct in
the light of our statute. *Crawfordsville v. Barr*, 65 Ind.
367; *Russ Lumber & Mill Co. v. Garrettson*, 87 Cal. 589,
25 Pac. 747; *Osborn v. Logus*, 28 Ore. 302, 37 Pac. 456, 38
Pac. 190, 42 Pac. 997; 27 Cyc. 356. Our decision in *James
v. Brainard-Jackson & Co.*, 64 Wash. 175, 116 Pac. 633,
is in harmony with this view, though that case involved the
foreclosure of a mortgage.

We conclude that the Modern Bungalow Company, as con-
tractor, was not a necessary party to the foreclosure of these
liens, and that, in any event, appellants waived whatever
right they had to insist upon the Bungalow Company being
made a defendant, by their silence on that question until the
close of the trial.

Contention is made in appellants' behalf that the notice
required by law to be given to the owner at the time of the
furnishing of material by claimants so furnishing it was not
given by some of these claimants as prescribed by Laws of
1911, ch. 77, page 376, reading as follows:

"Every person, firm or corporation furnishing materials
or supplies to be used in the construction, alteration or re-
pair of any mining claim, building, wharf, bridge, ditch,
dyke, flume, tunnel, well, fence, machinery, railroad, street
railway, wagon road, aqueduct to create hydraulic power,
or any other building, or any other structure, or mining

claim or stone quarry, shall, not later than five days after the date of the first delivery of such materials or supplies to any contractor or agent, deliver or mail to the owner or the reputed owner of the property on, upon or about which such materials or supplies are to be used, a notice in writing, stating in substance and effect that such person, firm or corporation has commenced to deliver materials and supplies for use- thereon, with the name of the contractor or agent ordering the same, and that a lien may be claimed for all materials and supplies furnished by such person, firm or corporation for use thereon; and no further notice to the owner shall be necessary. No materialmen's lien shall be enforced unless the provisions of this act have been complied with." 3 Rem. & Bal. Code, § 1133.

Respondent Brace & Hergert Mill Company mailed its notice to appellant A. S. Burbank at "5519 First Avenue Northeast, City," while appellants' correct address was 1519 Fifteenth avenue northeast. The post office authorities corrected the address and it was received by appellants in due course. We are clearly of the opinion that this was error not in the least prejudicial and not impairing respondent's lien right. The purpose of the address, of course, is to have the notice reach the owner, and when the address is sufficient to accomplish that purpose the court should not further inquire as to its sufficiency. Had the notice been addressed to appellants at Seattle, or instead, "City," without any street address and been received by appellant, it plainly would have answered all requirements of the law.

Respondent Dull Lumber & Fuel Company stated in its notice to appellants, and mailed to them, that it was furnishing the material upon "lot 12, block 1, Thompson's University Add." without naming any city or county. It is conceded this was a sufficient description of the official name of the lot and block upon which appellants' house was being constructed, aside from the omission of the name of the city. The notice was in all other respects sufficient, naming the Modern Bungalow Company as contractor to whom the material was being furnished. Now the statute above quoted

does not require that the premises be .described in the notice
in any particular manner. It would seem, then, that when
a notice is sufficient to inform one of ordinary intelligence
to what premises the notice refers, it should be held sufficient
to satisfy the requirements of the law. We think, in view of
appellants' ownership of this particular lot, and the fact
that they were then causing a dwelling house to be con-
structed thereon by the Modern Bungalow Company, the
contractor named in the notice, that the appellants must be
held to have understood that it meant the lot, block, and ad-
dition of that designation in the city of Seattle.

Respondent Greenlake Hardware & Furniture Company
mailed its notice to appellants at "5519 Fifteenth Avenue
Northeast, City," wherein it was stated that the material was
being furnished to the Modern Bungalow Company at "5503
Sixteenth Avenue Northeast," no city being named. It is
conceded that this was the correct designation of the location
of the premises, aside from the omission of the name of the
city. We think this notice was sufficient for the reasons
above stated, and that appellants must have understood, as
persons of ordinary intelligence, that the designation of the
number and street meant such number ·and street in the city
of Seattle; especially in view of the address at the heading
of the notice using the word "City" following the street and
number of appellants' residence. Manifestly, the notice was
referring to a location in the city of Seattle.

Respondent Commercial Sash & Door Company did not
comply with this statute as to giving notice to the owner.
While the material furnished by it was originally ordered by
the Modern Bungalow Company, it was, as found by the
trial court, eventually furnished by respondent at the in-
stance of appellants themselves. The question involved in
this claim is one of fact only, as to whether the material was
furnished at the instance of the appellants themselves. In
view of the evidence, we do not believe we should disturb the
conclusions of the trial court upon this question of fact.

When material is furnished upon the order of the owner, manifestly he has no need of notice. Our decisions in *Rieflin v. Grafton*, 63 Wash. 387, 115 Pac. 851; *Architectural Decorating Company v. Nicklason*, 66 Wash. 198, 119 Pac. 177, and *Hewitt-Lea Lumber Co. v. Chesley*, 68 Wash. 53, 122 Pac. 993, support this view, though they have reference to the statute as it existed prior to the act of 1911.

Respondent J. Thorn Plumbing Company gave no notice whatever to appellants of its furnishing material. It relies upon the notice given by the Bowles Company to appellants, which notice we may assume was sufficient to support a lien claim in favor of Bowles Company. This notice states, among other things, "that said material has been ordered by J. Thorn Plumbing Co." These are the only words in the notice having any reference to J. Thorn Plumbing Company. We are quite unable to understand how this notice can be made the basis of a claim of lien on the part of respondent J. Thorn Plumbing Company, whatever the rights of Bowles Company might be thereunder. It is true, as argued by counsel for respondent, that the statute does not expressly provide that the lien which may be claimed in pursuance of such notice shall be only a lien claimed by the person giving it. But reading the statute as a whole, it seems plain to us that is its spirit and intent. Counsel invoke the rule of liberal construction, which it is conceded is applicable to our lien statute because of express provisions therein. We think, however, that it would be carrying that rule too far to allow a lien claim in favor of one who has not himself or by agent given the required notice. There is nothing on the face of this notice indicating that it was given in the interest of any one except Bowles Company. We conclude that the lien claim of J. Thorn Plumbing Company must fail for want of its giving the notice as required by this law.

The lien claim of respondent E. W. Chandler, filed in the office of the county auditor, was signed "Weter & Roberts, Attorneys for Claimant." Counsel for appellants insist that

this is not a sufficient signing by respondent E. W. Chandler
as prescribed by the forms embodied in Rem. & Bal. Code,
§ 1134 (P. C. 309 § 63), which is required to be substan-
tially followed. The notice, however, was verified by Chand-
ler in person, he signing the verification at the foot of the
notice following the signature of his attorneys. This, we
are convinced, was a sufficient signing of the notice and a
substantial compliance with § 1134.

It is further contended in appellants' behalf that respond-
ent Chandler's lien notice is materially defective, in that it
does not claim a lien upon the house as well as upon the lot.
It reads as follows:

"Notice is hereby given that on the 31st day of March,
1913, E. W. Chandler, at the request of The Modern Bunga-
low Co. commenced to perform labor upon lot twelve in block
one of Thompson's University Addition, of which property
the owner or reputed owner is A. S. Burbank; the perform-
ance of which labor ceased on the 7th day of July, 1913;
that said labor performed was of the value of Five Hundred
Ninety Nine and 36-100 Dollars, for which labor the under-
signed claims a lien upon said property herein described for
the sum of $599.36."

It could hardly be contended that this failure to claim a
lien against the house constitutes other than an amendable
defect, especially in the light of the fact that the interest of
no third party is involved. Rem. & Bal. Code, § 1134 (P. C.
309 § 63). *Cornelius v. Washington Steam Laundry*, 52
Wash. 272, 100 Pac. 727; *Malfa v. Crisp*, 52 Wash. 509,
100 Pac. 1012. At the conclusion of the evidence introduced
on behalf of respondent Chandler, which evidence clearly
showed that he had performed and furnished labor in the
construction of the house entitling him to a lien upon the
house and lot, all of which evidence was received without ob-
jection on the part of appellants' counsel, and when his lien
notice was offered in evidence, counsel for appellants objected
thereto as follows:

"To that lien we desire to have an exception. An objection as to the sufficiency of the description and the signature."

Had this objection pointed out in what particular the description was defective, no doubt an amendment would have been requested and allowed to fit the proof theretofore received without objection. We think the lien notice should now be treated as amended in so far as it needed amending. Counsel for appellants relies upon the early decision of this court in *Warren v. Quade*, 3 Wash. 750, 29 Pac. 827, in support of this contention as to the defect in Chandler's lien notice. That case, however, was decided before the enactment of the present lien law which contains such liberal provisions touching amendment of lien notices, and under a statute which required much stricter rules of pleading and construction against lien claimants. We think that decision is not controlling here. Other contentions made by appellants against the claim of respondent Chandler involve only questions of fact, as to which we are quite clear we should not disturb the conclusions of the trial court.

Among items of claimed cost of the material furnished by several of the lien claimants was a small charge for cartage. This, counsel for appellants insists, is not properly a lien item. In the light of the fact that the material to be furnished was to be furnished upon the ground at the place of the construction of the house, we are unable to see why this item of cartage does not properly enter into and become a part of the cost of the material as much as any labor performed upon the material in the production of it. Manifestly the lien claimants furnishing material were to be paid the cost of the material at the place of construction. Under such circumstances, we think that cartage may be regarded as a part of the cost of the material.

In rendering the final decree, the trial court allowed interest on several of the lien claims computed from the time of the furnishing of the material, instead of only from the time of the filing of the liens. This, it is insisted by counsel

for appellants, was erroneous, in view of the fact that the
claims were unliquidated.    Such allowance of interest, we
may concede for present purposes, to be technically erro-
neous.  The amount of excess interest so allowed on each claim
is quite small.   It varied from a few cents to three dollars in
amount.    Several of the respondents concede this technical
error, but insist that it was not of such substantial nature
as to warrant the awarding of costs to appellants in this
court.   We feel constrained to adopt this view.    There is
in the record before us the memorandum decision of the trial
court, which, while not strictly findings of fact, is a brief
review of each claim and a statement of the court's conclu-
sion as to the amount and the interest each claimant is en-
titled to, from which it appears that the court then evidenced
its intention of awarding interest which is now complained
of as error.   In the concluding remarks of the court in this
memorandum decision, the judge stated that he would be glad
to consider the cause further as to "what may seem any over-
sight or error in the foregoing opinion," manifestly referring
to errors of detail.    The final decree was not entered in the
case until some two weeks following the rendering of this
memorandum decision, during which time no suggestion was
made by counsel for appellants to the court touching these
small technical errors.    Had it been so suggested, it seems
plain the court would have corrected them and not allowed
them to occur in the final decree.    While appellants may be
entitled to have this excessive interest eliminated from the
decree, we do not think that, under the circumstances, it
should be regarded as of such substantial, favorable disposi-
tion of the cause here in their favor as to award them costs
or prevent the respondents, other than J. Thorn Plumbing
Company, from recovering their costs in this court.

Another possible error, conceded by counsel for respond-
ents to be such, which was permitted to become a part of the
decree, evidently inadvertently, was the provision therein that

the purchaser of the premises at the sale ordered to satisfy respondents' lien claims "shall be let into immediate possession thereof." This, it is conceded by respondents' counsel, was erroneous because of the fact that the sale would necessarily be of the homestead of appellants. Assuming, without deciding, that this was erroneous because the sale would be of the homestead of appellants and that the decree should be modified by striking it therefrom, we do not think that appellants are entitled to recover costs in this court because of such modification of the decree, because the error was not claimed by them until they filed their reply brief. Counsel for respondents, however, have consented that the decree be modified by striking this provision therefrom.

Contention is made in appellants' behalf against the lien claim of Anderson & Wheaton, and especially against the personal judgment rendered thereon against appellants. This personal judgment was rested upon the fact, as found by the trial court, that the material furnished by respondents was ultimately so furnished at the instance of appellants themselves. This contention involves only questions of fact, which, upon a review of the evidence, convinces us that we should not disturb the conclusions of the trial court thereon.

Other contentions of counsel for appellants we think are without merit, and are not such as to call for further discussion. In so far as we regard them meriting serious consideration, they are, in effect, disposed of by what we have said in the discussion of the questions above noticed.

We conclude that that portion of the decree awarding foreclosure of the lien claim of J. Thorn Plumbing Company should be reversed; that the decree should be modified by eliminating therefrom interest in so far as it is computed upon the lien claims prior to their filing in the office of the county auditor; that that portion of the decree providing for immediate possession of the premises by the purchaser at the sale should be stricken therefrom; and that in all other respects the decree should be affirmed. It is so ordered, and

the cause is remanded to the trial court with direction to correct its decree accordingly.

Respondents, other than the J. Thorn Plumbing Company, will recover their costs incurred in this court against appellants. Appellants will recover their costs incurred in this court in prosecuting their appeal against the J. Thorn Plumbing Company.

MORRIS, C. J., MAIN, MOUNT, CHADWICK, FULLERTON, and ELLIS, JJ., concur.