[No. 21623. Department One. April 22, 1929.]

THE STATE OF WASHINGTON, *Appellant*, v. FRANK HERR *et al., Respondents.*[1]

*Joseph Hovey*, for appellant.

*Thos. M. Askren* and *F. A. Kern*, for respondents.

HOLCOMB, J.—An information was filed in the superior court for Kittitas county on October 31, 1927, charging these six respondents with the violation of the game statutes, in that they did, on October 20, 1927, in Kittitas county, Washington, unlawfully kill six elk.

Respondents demurred to the information upon

[1]Reported in 276 Pac. 870.

several grounds; but upon argument of the demurrer in the lower court, it was stipulated by the state and respondents that, in passing upon the demurrer to the information, the court should consider solely the question of whether or not respondents, having a general hunting license and a special elk license, could lawfully kill elk in Kittitas county, Washington, on October 20, 1927.

The court sustained the demurrer to the information, and upon the announcement of the state that it would stand upon the information as filed, dismissed the action.

The information is based upon Laws of 1925, Ex. Ses., p. 521, § 57 (Rem. 1927 Sup., § 5931-57) which is denominated in the act itself as the "Game Code of the state of Washington." By that code, a repealing clause was also enacted containing a schedule of a large number of acts repealed, and also a general clause repealing all acts and parts of acts in conflict therewith.

Among other things, a part of § 8 of that act reads:

"The words 'open season,' wherever used in this act, shall be held to mean the time during which it shall be lawful to hunt, trap or fish for game animals, fur-bearing animals, game birds or game fish. Each period of time prescribed as an open season shall be construed to include the first and last days thereof." Laws of 1925, Ex. Ses., p. 497, § 8; Rem. 1927 Sup., § 5931-8.

In 1927, the legislature passed an act which was compiled by the secretary of state, for reasons best known to himself, as chapter 291, headed "Game Code: License to Kill Elk." It is entitled "An Act relating to game animals; providing for the issuance of special licenses for the killing of elk in certain localities and the disposition of license fees." [Laws of 1927, p. 711; Rem. 1927 Sup., § 5931-57a.]

It was there enacted:

"Section 1. It shall be lawful for any citizen of the state of Washington having first procured a special annual license therefor, issued by the game commission, of any county lying east of the summit of the Cascade mountains and north and west of the Columbia river, and south of the Wenatchee range of mountains, and paying therefor a fee of five dollars, to kill one elk in such counties, . . . between the 20th day of October and the first day of November, in the year 1927 and 1928."

This act was approved by the Governor March 19, 1927.

At the same session of the legislature, there was enacted a number of amendments to the game code which were compiled by the secretary of state as ch. 258, Laws of 1927, p. 588 [Rem. 1927 Sup., § 5931-4 *et seq.*], which was also approved by the Governor March 19, 1927, which act bore later dates of enactment than did chapter 291, *supra.*

Chapter 258, *supra,* amended the game code in many respects but did not amend, nor purport to amend, the closed season for elk in any particular. Chapter 291, *supra,* does not purport to be an amendatory act, but is apparently an act complete in itself and making no reference to the game code or the amendments to the game code later enacted by the legislature, except that the act in question provides for the issuance of the special license therefor by the game commission of the county in which the act permits elk to be killed during the season prescribed, and for the payment of one half of the fees collected under the permissive act (ch. 291) into the county game fund of the county in which the license is issued, and the other half into the state game fund.

It will be observed that the permissive act (ch. 291), if its terms are construed strictly, limits the open season for killing elk in the region in question—which in-

cludes Kittitas county—to the period between the 20th day of October and the first day of November in each of the years 1927 and 1928.

The only question to be determined upon appeal is, what is the construction to be given the words used in chapter 291, *supra?*

Appellant contends that chapter 291 stands alone as a special act permitting the killing of elk in the region prescribed for a certain period in each year during 1927 and 1928, regardless of any provisions of the game code; and that chapter 291 is not to be considered in *pari materia* with the game code.

Cases and texts are cited to the effect that the word "between," when used in speaking of the time between two certain days, generally excludes the days designated as the commencement and termination of such period. 1 Words & Phrases (1st ed.), 766; 7 C. J. 1146; also a number of cases from various jurisdictions to the same effect.

It is argued that the legislature manifestly intended, when it said "between the 20th day of October and the first day of November," to limit the open season to the exclusion of the first and last days mentioned. It is also argued that it must be remembered that, at the same session the legislature, by chapter 258, amended the game code and must have had in mind that it had, at the same session, passed chapter 291. It is urged that, if there is any conclusion to be derived from the enactment of both chapters at the same session, chapter 258 was, in fact, passed later than chapter 291, although given a lower number in compiling chapters in the session laws.

Appreciating the force of the argument of appellant, we have also to bear in mind that penal statutes must be construed strictly to the end that no citizen shall be deprived of his liberty under a law

that is *malum prohibitum* only. *State v. Coolidge,* 72 Wash. 42, 129 Pac. 1088; *State ex rel. Dorrien v. Hazeltine,* 82 Wash. 81, 143 Pac. 436; *State v. Furth,* 82 Wash. 665, 144 Pac. 907; *Huntworth v. Tanner,* 87 Wash. 670, 152 Pac. 523, Ann. Cas. 1917D 676; *State v. Eden,* 92 Wash. 1, 158 Pac. 967, 159 Pac. 700; *State v. Hoffman,* 110 Wash. 82, 188 Pac. 25; II Lewis' Sutherland Statutory Construction (2nd ed.), § 520.

█ In construing this statute, we are convinced that it must be considered in *pari materia* with all statutes relating to the same subject; that is, closed or open seasons for the killing of such game as is described therein and in the information before us.

By the game code of 1925, the killing of elk throughout the state at all times was prohibited. By this same code, in § 8, the legislature placed an interpretation that should be followed by all courts and officers upon open and closed seasons, and prescribed that each period of time prescribed as an open season shall be construed to include the first and last days thereof. It does not appear that the subsequent chapter (ch. 191, Laws of 1927, p. 711) covered the whole subject matter of the former one, or was intended to take its place. *Hewitt-Lea Lumber Co. v. Chesley,* 68 Wash. 53, 122 Pac. 993.

It has been well settled in this jurisdiction that,

"All laws upon a given subject should be construed together so as to produce a harmonious system if possible; the presumption being that a new law relating to such subject was enacted with reference to the former laws." *White v. North Yakima,* 87 Wash. 191, 151 Pac. 645.

See, also, *State ex rel. La Grave v. Seattle,* 111 Wash. 340, 190 Pac. 906.

Laws that are in *pari materia* will be read together for the purpose of ascertaining the legislative intent.

*State ex rel. Washington Water Power Co. v. Savidge,* 75 Wash. 116, 134 Pac. 680; *White v. North Yakima, supra.*

"The right of the legislature to prescribe the legal definitions of its own language must be conceded. . . . when the legislature puts a construction on an act, a subsequent cognate enactment in the same terms would, *prima facie,* be understood in the same sense." Endlich on Interpretation of Statutes, § 365.

II Lewis' Sutherland Statutory Construction (2d ed.), § 443; 36 Cyc. 1147; 25 R. C. L. § 285, p. 1060.

The substance of the rule relating to statutes in *pari materia* is that all consistent statutes which can stand together, though enacted at different dates, relating to the same subject, are treated prospectively and construed together, as though they constituted one act; and for the purpose of learning and giving effect to the legislative intention, all statutes relating to the same subject are to be compared, even though some of them have expired or been repealed; and, so far as still in force, construed in reference to each word, that effect may be given to all the provisions of each, if that can be done by any fair and reasonable construction.

That the above is the rule of the construction existing in this state, in addition to the cases heretofore cited, see also, *Davidson v. Carson,* 1 Wash. Terr. 307; *Pierce County ex rel. Maloney v. Spike,* 19 Wash. 652, 54 Pac. 41; *New Whatcom v. Roeder,* 22 Wash. 570, 61 Pac. 767; *State ex rel. Miller v. Griffin,* 46 Wash. 489, 90 Pac. 661.

Here we have a statute which, if given strict construction, excludes the first and last days prescribed. To give it that strict construction would make an act criminal which, before its enactment, would be entirely prohibited; but if permitted by a permissive

proviso in the game code itself, would be construed by the terms of that code which provide that the first and last days in defining any open season shall be included.

Although it would have been much better had the legislature used some such words as "both dates inclusive,". or used some other term than the word "between such dates," the most that can be said of the use of the word "between" in the enactment of chapter 291, *supra,* is that it renders the act ambiguous. In that case the rule of in *pari materia* applies in full force, and the construction given by the legislature itself in other enactments on the same subject must be recognized. *Anderson v. Eischen,* 16 Fed. (2d) 54; *United States v. Garretson,* 42 Fed. 22; *Daggett v. State,* 4 Conn. 60, 10 Am. Dec. 100.

In *Taylor v. Brown,* 147 U. S. 640, that court recognized the great difficulty in applying any universal rule applicable to the use of such words. The decision of another court was quoted with approval (*Griffith v. Bogert,* 18 How. 158), as follows:

"It would be tedious and unprofitable to attempt a review of the very numerous modern decisions, or to lay down any rules applicable to all cases. Every case must depend on its own circumstances. Where the construction of the language of a statute is doubtful, courts will always prefer that which will confirm rather than destroy any *bona fide* transaction or title. The intention and policy of the enactment should be sought for and carried out."

This being a criminal case and the language of chapter 291, Laws of 1927, p. 711 (Rem. 1927 Sup., § 5931-57a), being ambiguous, we are convinced that, by the ordinary rules of statutory construction, and the rules in force in this state, the legislature intended that their former interpretation of what would constitute an open season was intended to apply in the act

630

in question. Hence, the first and last days are included in the open season.

We are therefore of the opinion that the judgment of the trial court was right.

Affirmed.

MITCHELL, C. J., TOLMAN, FULLERTON, and BEALS, JJ., concur.