[No. 21501. Department One. May 2, 1929.]

THE STATE OF WASHINGTON, *Respondent*, v. GEORGE H. DIEBOLD, *Appellant*.[1]

*Jay C. Allen* and *John F. Walthew*, for appellant.

*Ewing D. Colvin* and *Ralph Hammer*, for respondent.

[1]Reported in 277 Pac. 394.

BEALS, J.—The defendant was charged by information with the crime of murder in the second degree, the charging part of the information being as follows:

"He, said George H. Diebold, in the county of King, state of Washington, on the 5th day of March A. D. 1928, while unlawfully and feloniously engaged in taking and withdrawing from the scene of taking an automobile without the permission of one J. S. Pendleton, the owner thereof, did then and there unlawfully and feloniously, without excuse and justification operate and drive said automobile into, against and over the body of one Louise Lang, a human being, thereby mortally wounding and maiming said Louise Lang from which said mortal wounds the said Louise Lang languished and died on the 6th day of March A. D. 1928.

"Contrary to the statute in such case made and provided, and against the peace and dignity of the state of Washington."

To this information the defendant pleaded not guilty. The trial resulted in a verdict of guilty, and from judgment on the verdict of the jury and a sentence imposed thereon, defendant appeals.

Paragraph (2) of Rem. Comp. Stat., § 2393, under which section appellant was prosecuted, defines the killing of a human being (unless excusable or justifiable) as murder in the second degree,

". . . when perpetrated by a person engaged in the commission of, or in an attempt to commit, or in withdrawing from the scene of, a felony other than those enumerated in § 2392."

The felonies enumerated in Rem. Comp. Stat., § 2392, defining murder in the first degree, referred to in the section quoted, are not relevant to the case now before us.

It appears from the evidence that appellant was a taxicab driver. About four o'clock on the morning of March 5, having completed their work, ap-

pellant and a friend, one McKay, also a taxi driver, were lunching together. McKay had a bottle of liquor, and one drink led to another, further supplies of gin being procured as desired. Shortly before six o'clock, the two men, in walking along the street, noticed a new sedan, bearing a "for hire" sign, standing unguarded in front of the office of the Lodge Cab Company, in which company one J. S. Pendleton was part owner. Appellant and his companion, after admiring the new car, entered it and drove away. They proceeded to the University district by way of the Montlake bridge, a distance of about five miles, parking the car about two blocks from a cafe to which they walked for something to eat. Appellant, realizing that he was under the influence of liquor and in no fit condition to drive a car, telephoned to the office of the taxi company by which he was employed, and requested that a taxi be sent out to the cafe, the two men intending to ride down town in the cab which should respond to their order. One Rex Button responded to the call, but, upon his arrival at the cafe, appellant and his companion decided that they would, themselves, drive the sedan which they had taken, they testifying that they were going to drive it back to the place from which they took it. Button testified that McKay appeared to be the less intoxicated of the two, and that he advised appellant that McKay should do the driving, which was agreed to. After Button's departure, appellant and McKay again took possession of the sedan and started back toward town. In spite of his statement to Button, that he would not drive the car, appellant took the wheel. At the corner of Twenty-fourth avenue north and Miller street, several school girls, attending the Garfield high school, were standing near a telephone pole awaiting a street car. As the automobile driven by appellant rounded a gradual

curve on Twenty-fourth avenue north, traveling between thirty and forty-five miles an hour, appellant lost control of the car, which was headed directly towards the cluster of school children. Appellant applied his brakes, but could not stop the machine, which struck the group of girls, mortally wounding Louise Lang, who died very soon after the accident.

Appellant was arrested a few moments later, and at first, denied any knowledge of the collision, but later admitted that he had been driving the automobile.

Testimony was introduced on the trial to the effect that the "steering arm or drag-link" of the sedan was broken, and that a considerable portion of the break through the metal appeared to be an old crack.

Appellant was charged with the crime of murder in the second degree upon the theory that he was guilty of the offense of taking an automobile without the consent of the owner, that crime being a felony under the law of this state, and that the homicide occurred in the commission of, or in withdrawing from the scene of, the felony.

Appellant contends that, as he unlawfully took possession of the sedan at the corner of Fourth and Westlake avenues in the down town district of the city of Seattle, and that, as appellant was not pursued, it not appearing that the car was missed for some time after appellant took possession of it, and, as, at the time of the accident, appellant was driving the car back towards the point from which he had taken it, the homicide did not occur in taking, or in withdrawing from the scene of taking, an automobile without the permission of the owner, as charged in the information.

The act defining murder in the second degree, being a criminal statute, is, of course, to be strictly construed. In deciding whether or not a particular crime falls within the purview of a certain section of

the criminal code, courts should not be influenced by any feeling of disgust aroused by the reckless or cruel conduct of the accused, or by any desire to see that well merited punishment is meted out to the perpetrator of a shocking crime, but are concerned only with the legal interpretation of an act of the legislature which concerns the rights and liberty of a human being.

The evidence introduced by the prosecution, of course, supported a charge of manslaughter. Whether or not it supports a charge of murder in the second degree, must now be considered.

■. As to when a homicide may be said to have been committed in the course of the perpetration of another crime, the rule is laid down in 13 R. C. L. 845, as follows:

"It may be stated generally that a homicide is committed in the perpetration of another crime, when the accused, intending to commit some crime other than the homicide, is engaged in the performance of any one of the acts which such intent requires for its full execution, and, while so engaged, and within the *res gestae* of the intended crime, and in consequence thereof, the killing results. It must appear that there was such actual legal relation between the killing and the crime committed or attempted, that the killing can be said to have occurred as a part of the perpetration of the crime, or in furtherance of an attempt or purpose to commit it. In the usual terse legal phraseology, death must have been the probable consequence of the unlawful act. But when death is or is not consequent on an unlawful act is a point on which the courts well may differ. It has been held that a person is not guilty of manslaughter for the death of a bystander through the glancing of a bullet, when, being guilty of a misdemeanor in violating statutes against carrying concealed weapons, being drunk in a highway, and shooting in a highway, he fires a pistol into the ground, unless the death is the natural or probable result of his act. And

quite plainly the death of one of the participants in a friendly scuffle through the accidental discharge of a pistol carried in the pocket of the other contrary to the provisions of the statute cannot be said to be caused by the performance of a wrongful act, so as to render the one carrying the pistol guilty of manslaughter, under the provisions of a statute that whoever unlawfully kills a human being involuntarily, but in the commission of some unlawful act, is guilty of that crime.''

As to the necessary relationship between the felony and the homicide, the following is found in an exhaustive note in volume 63, L. R. A. 368:

''In order to make a killing without design or intent murder within the meaning of the statute, the felony committed or attempted, from which the implied malice necessary to murder must be derived, must at least have intimate relation and close connection with the killing, and must not be separate, distinct, and independent from it; and when the act constituting the felony is in itself dangerous to life, the killing must be naturally consequent to the felony. *Pliemling v. State,* 46 Wis. 516, 1 N. W. 278.

''To render a killing without malice murder in the first degree, it must have been done in pursuance of an unlawful act, and not collaterally to it. *Rex v. Plummer,* 1 Kelyng, 109, 12 Mod. 627.

''It is not enough that the killing occurred soon, or presently, after the felony was attempted or committed; there must be such a legal relationship between the two that it can be said that the killing occurred before the felony was at an end, so that the felony had a legal relationship to the killing, and was concurrent with it in part at least, and a part of it in an actual and material sense. *Hoffman v. State,* 88 Wis. 166, 59 N. W. 588.''

We do not think that the evidence shows a case which is within the purview of § 2393, *supra.* It cannot be held that, at the time appellant drove his car against the unfortunate victims of his carelessness, he was

committing, or attempting to commit, or withdrawing from the scene of, a felony. Just where the act of withdrawal from the scene of a felony would be completed, the felony consisting of taking an automobile without permission, as did appellant in the case at bar, it is not necessary at this time to determine. Under the circumstances here presented, it cannot be held that the homicide occurred while appellant was withdrawing from the scene of the crime which he committed when he took the automobile. Of course it might well be that a thief would drive a car which he had stolen a certain distance in one direction away from the place he took the car, and then, for the purpose of misleading possible pursuers, retrace his course in a general direction over the route by which he had left the scene of his crime, but the evidence in the case at bar cannot be reconciled with such a theory.

Of course, in a sense, a criminal is "withdrawing from the scene of a felony" if, after committing a crime, he keeps traveling in an attempt to escape, up to any conceivable distance, and in any directions, but such a "withdrawal" is not that contemplated by § 2393, above quoted.

Respondent urges that, because appellant and his companion parked the car in the University district near a restaurant to which they went for something to eat, they testifying that, at that time, they intended to leave the car where they had parked it and take a taxi down town, and because they later changed their minds and went back and took possession of the car, there then occurred a second unlawful taking of the machine, and that, at the time of the accident, they were withdrawing from the scene of the second unlawful taking. This argument is unsound. That appellant, in his intoxicated condition, may have, for a while, intended to leave the car parked out in the University

district, and later changed his mind and decided that he would drive it down town, nowise constituted a second unlawful taking of the automobile. There was only one unlawful taking, and that occurred when appellant and his companion first entered the sedan.

Respondent cites certain cases in which convictions have been upheld, based upon testimony which showed an unintentional homicide while engaged in an unlawful act. These authorities are unquestionably sound, but are not in point on the issues now before us. The question is not whether the evidence proved that appellant was guilty of a crime in causing the death of Louise Lang, but whether or not the evidence supports a conviction of murder in the second degree. Of course, it is true, as stated by respondent, that had appellant not unlawfully taken the automobile and driven the same, the unfortunate victim of his recklessness would have been alive today, but that fact of itself is insufficient to bring the offense committed by appellant within the purview of the section of the code defining second degree murder. Counsel for respondent cite the case of *Commonwealth of Massachusetts v. Madeiros,* 255 Mass. 304, 151 N. E. 297, 47 A. L. R. 962, in which the trial court instructed the jury, in part, as follows:

"Where a defendant is engaged in the commission or attempted commission of some crime of the degree of felony—that is, a crime punishable by death or imprisonment in the state prison—and some act done by him in the commission or attempted commission of such felony results in the death of some person, the killing is with 'malice aforethought' within the meaning of the law, and the killing is murder, although the defendant did not intend to kill, or even to harm the deceased."

Supporting this proposition, the court, in its instructions, cited instances, such as that of a man

burning his own building in an attempt to defraud an insurance company and unintentionally burning some-one to death, or that of the perpetrator of a rape who unintentionally causes the death of his victim, or that of a burglar who binds and gags a person, so causing death. It appears from the instructions of the trial court that the case presented was that of a man, convicted of murder, who had pointed a loaded revolver at another for the purpose of intimidation in facilitating the commission of the crime of robbery. The revolver was discharged causing the death of the person at whom it was aimed. It was held that the instructions given by the trial court correctly stated the law, and there can be no question but what the law of Massachusetts was correctly interpreted by the supreme court of that state in the case cited. The opinion, however, is not relevant here, as in that case the killing was undoubtedly part of the actual commission of the crime. The question before us is not whether appellant was guilty of any crime, but whether or not the evidence supports the verdict of guilty of a particular crime, to wit, that of murder in the second degree.

Counsel for respondent cite the case of *State v. Whitfield,* 129 Wash. 134, 224 Pac. 559, in which a conviction of the crime of murder, committed in the course of the perpetration of a rape, was upheld. In the course of the opinion, this court comments upon the fact that it is often impossible for the state to know at just what instant the killing was committed, whether in an attempt to commit the crime, in the commission thereof, or while withdrawing from the scene. The difficulty referred to, as to the question of fact, is not present in the case at bar. The facts as to time and place are practically undisputed. The

question presented here is one of law, and not one of fact, and the case cited does not aid in its solution.

Counsel for respondent also cite the case of *State v. Landaker*, 138 Wash. 267, 244 Pac. 555, in which the defendant had been convicted of murder in the' first degree, the conviction being upheld by this court. The facts showed that the defendant was one of a party of men who held up several Italians on the premises which they occupied, and proceeded to steal a considerable quantity of intoxicating liquor found on the place. Two of the gang stood guard over the Italians while appellant took the liquor away for the purpose of hiding it. While appellant was secreting the liquor, the man standing guard over the prisoners fired his pistol, killing one of them. This court held that the original wrong had not yet been fully completed at the time of the killing, and that all the persons engaged in the crime intended that the owners of the liquor should be held helpless until all the liquor could be removed, and that the appellant, being engaged in removing the liquor, was properly convicted of murder in the first degree, based upon the killing by his associate. It is perfectly evident that, as this court stated, the original wrong had not yet been fully completed at the time of the killing. The owners of the liquor were still being held under guard, the liquor itself was being hidden. The killing was committed in the actual commission of the felony. The case throws no light upon the question now before us.

We are compelled to hold that appellant was charged under the wrong section of the statute, and that the testimony does not support the verdict of guilty of murder in the second degree.

Other questions are presented in appellant's brief, but, in view of the conclusion we have reached, need not be discussed, as few of the matters upon which

78

alleged errors are assigned could arise upon a prosecution of appellant for the crime of manslaughter.

The judgment appealed from is reversed, and the cause remanded for further proceedings not inconsistent with this opinion.

MITCHELL, C. J., TOLMAN, and HOLCOMB, JJ., concur.

FULLERTON, J., dissents.