[No. 32940. Department One. May 19, 1955.]

THE STATE OF WASHINGTON, *Respondent*, v. W. S. KELSEY, *Appellant*.[1]

[1]Reported in 283 P. (2d) 982.

*Stuart K. Nielsen*, for appellant.

*Robert E. Conner* and *George F. Potter*, for respondent.

OTT, J.—This is an appeal from a judgment and sentence, based upon the verdict of a jury finding the appellant guilty upon ten counts of unlawfully practicing medicine and surgery without a valid, unrevoked certificate, and upon one count of holding himself out as a person authorized to practice medicine and surgery.

May 28, 1925, W. S. Kelsey made application for a license to practice drugless healing, as provided by Laws of 1919, chapter 36, p. 64 [*cf.* RCW, 18.36]. July 21, 1926, a license to practice drugless healing as a sanipractic was granted him by the department of licenses. The appellant, since 1926, has continuously practiced in Chelan, Washington.

By information filed March 17, 1954, the prosecuting attorney for Chelan county charged the appellant as above indicated. Upon the trial of the cause, the jury found the appellant guilty, and he has appealed from the judgment and sentence entered upon the verdict.

The appellant's principal contention is that, since he was licensed to practice as a sanipractic, the manner in which he carried on his business was within the scope of his license and hence not unlawful.

The statutes of the state of Washington provide:

RCW 18.71.010 [*cf.* Rem. Supp. 1947, § 10008]: "The practice of medicine and surgery consists of the use of drugs or medicinal preparations in or upon human beings, severing or penetrating the tissues of human beings, and the use of any and all other methods in the treatment of diseases, injuries, deformities, or other physical or mental conditions."

RCW 18.71.020 [*cf.* Rem. Rev. Stat., § 10018]: "Any person who practices or attempts to practice, or holds himself out as practicing medicine and surgery without having a valid, unrevoked certificate . . . shall be guilty of a misdemeanor. . . ."

RCW 18.71.030 [*cf.* Rem. Rev. Stat., § 10024]: ". . . This chapter shall not be construed to apply . . . to any drugless method of treating sick or afflicted, . . . nor to any person holding a license for any system of drugless practice."

Drugless healing is defined as:

" 'Drugless therapeutics' consists of hydrotherapy, dietetics, electrotherapy, radiography, sanitation, suggestion, mechanical and manual manipulation for the stimulation of physiological and psychological action to establish a normal condition of mind and body, but in no way includes the giving, prescribing, or recommending of pharmaceutic drugs

and poisons for internal use." RCW 18.36.010 [*cf*. Rem. Rev. Stat., § 10123.]

The separate and co-ordinate systems of drugless practice are described as follows:

"(1) Food science, the science of treating disease through the chemical action of foods, water, nonmedicinal herbs, roots, barks, and all natural food elements, other than pharmaceutic drugs and poisons, to bring about a normal condition of health.

"(2) Mechano-therapy, a system of therapeutics which enables the practitioner to know how to apply scientifically the mechanics of hydrotherapy, dietetics, circumstances, idea and manual manipulation for the stimulation of psycho and physiological action to establish a normal condition of the body.

"(3) Suggestive therapeutics, a system of healing which enables the practitioner to know how to offer suggestions that will cause the mind of the patient to overcome the disease of the body and bring mind and body into harmony, and both into harmony with environment.

"(4) Physcultopathy, a system of healing which enables the practitioner to know the scientific effect of movements on the body, and how to direct a system of mechanical gymnastics that restore the diseased parts or functions to a normal condition." RCW 18.36.020 [*cf*. Rem. Rev. Stat., § 10122].

The scope of the drugless healer's license is as follows:

"(1) To practice mechanotherapy;
"(2) To practice suggestive therapeutics;
"(3) To practice food science;
"(4) To practice physcultopathy;
"(5) To practice any other separate and coordinate system of drugless practice. Practitioners shall confine their practice to the subjects and systems represented by their licenses." RCW 18.36.100 [*cf*. Rem. Rev. Stat., § 10114].

A drugless healer's advertising is restricted as follows:

"On all cards, books, papers, signs, or other written or printed means of giving information to the public on any system of practice, the practitioner shall use after or below his name the proper term designating the special line of drugless practice in which he is engaged, and shall not use after his name the letters, 'M. D.' or Doctor of Medicine and

Surgery, or 'D. O.' or Doctor of Osteopathy, or 'D. C.' or Doctor of Chiropractic." RCW 18.36.120 [*cf.* Rem. Rev. Stat., § 10124.]

What is a drug? What is practicing medicine and surgery? What is the limit of a drugless healer's license?

In *State v. Lydon,* 170 Wash. 354, 16 P. (2d) 848 (1932), we said:

(a) Drugless healing includes sanipractic, though not specifically named. (See, also, *State v. Temby,* 172 Wash. 131, 19 P. (2d) 661 (1933).)

(b) The practice of surgery means "to sever or penetrate the tissues of human beings."

(c) "The appellant makes some further contention that his right to practice surgery arises by virtue of his right to practice mechanotherapy and mechanical manipulation. These terms mean simply a remedial treatment consisting of manipulating a part, or the whole, of the body, with the hand or by mechanical means. In plain English, they mean massage, manually or mechanically performed. They certainly do not include the practice of surgery in any form."

In *State v. Houck,* 32 Wn. (2d) 681, 203 P. (2d) 693 (1949), we held that drugless healers should be allowed to do only those acts included within the statutory definition. See, also, *State v. Lydon, supra; Martin v. Department of Social Security,* 12 Wn. (2d) 329, 121 P. (2d) 394 (1942); *Carney v. Lydon,* 36 Wn. (2d) 878, 220 P. (2d) 894, 224 P. (2d) 634 (1950).

In *Kelly v. Carroll,* 36 Wn. (2d) 482, 219 P. (2d) 79, 19 A. L. R. (2d) 1174 (1950), this court held:

(a) Drugless healers are not doctors and are prohibited from practicing medicine or surgery. See, also, *State v. Karsunky,* 197 Wash. 87, 84 P. (2d) 390 (1938).

(b) Drugless healers are licensed to use (1) heat and cold through the medium of water or electricity, (2) exercise or movement of the parts of the body, (3) manual or mechanical massage, (4) electric radiation or current, (5) diet, (6) mental suggestion. Their practice must be without the use of drugs.

(c) A drug is a substance that is used as a medicine for internal or external use in the treatment of disease. It embraces patent or proprietary remedies. Calling drugs domestic or family remedies does not rob them of their character as medicine.

■ It is quite clear that the legislature intended to give to those who qualified as medical doctors and surgeons an exclusive certificate to administer drugs and to sever tissues of the human body. It likewise determined that there is a field of healing science that can be accomplished without the use of medicines or the penetration of tissues. The legislature precisely provided that the law requiring a medical certificate would not apply to the field of drugless healing, because these practitioners would not be severing tissues of the human body and would not be using or prescribing medicine. Hence, it follows that when, in the judgment of a drugless healer, it is necessary for drugs to be used or prescribed, or tissues severed, to effect a cure for his patient, he must conclude that he cannot legally treat the patient within the limits of his license. At that point, the drugless healer's authority ends, and to go further is entering into the exclusive field of practice reserved to qualified medical doctors and surgeons. *State v. Lydon, supra*; *State v. Houck, supra*; *Kelly v. Carroll, supra*.

■ We find that appellant, W. S. Kelsey, in attending his patients named in counts 1, 2, 6, 7, 8, 9, 11, 12, 13, and 14 of the information, either severed tissues or used or prescribed drugs to effect a cure for the illness or disease of these patients. Hence, in each of these ten counts, he was unlawfully practicing medicine without a valid, unrevoked certificate and beyond the scope of his sanipractic license, as defined by the laws of the state of Washington.

The appellant next questions the sufficiency of the proof to warrant a conviction of the crime of "holding himself out" as a practitioner of medicine and surgery on January 8, 1954.

The proof offered by the state established the following facts:

(1) W. S. Kelsey was at his office on the day in question.

(2) On the window of his office facing the street, in large letters, was the sign "Dr. W. S. Kelsey."

(3) February 19, 1953, he advertised in a local newspaper as follows: "Dr. W. S. Kelsey wishes to announce that Dr. D. L. Miller of Portland has recently joined his staff."

(4) W. S. Kelsey had previously practiced medicine and surgery, as proved in the charges referred to above.

(5) It was established by a local druggist that W. S. Kelsey had previously telephoned to him prescriptions for drugs to be delivered to his patients.

(6) On the day in question, W. S. Kelsey had drugs in his possession.

Appellant contends that there was no proof of an overt act by W. S. Kelsey of actually practicing medicine upon any patient on January 8, 1954, and hence the conviction upon count 15 cannot be sustained.

The legislature, by RCW 18.71.020, *supra*, provided that an *attempt* to practice medicine is a separate offense, as distinguished from the offense of one *holding himself out* to practice. One "holds himself out" as a practitioner of medicine when he leads others to believe that he can lawfully engage in such practice. Did the appellant lead persons to believe that he could legally practice medicine? The sign on the window and the newspaper advertising did not indicate that he was a drugless healer, as required by RCW 18.36.120, *supra*. The drugs found on the premises on the day in question are not supplies of a drugless healer. His previous conduct in prescribing drugs and performing services is proof which tends to establish an intent to practice. See *State v. Hartwig*, 45 Wn. (2d) 76, 79, 273 P. (2d) 482 (1954).

We hold that there was sufficient evidence to sustain the verdict of guilty on count 15.

Appellant further assigns as error the admission of the testimony of the witness Audrey Elgin concerning conversations with Mr. Miller, in the absence of the appellant.

Prior to the objection, the witness had testified that W. S.

624

Kelsey left the room and that, in his absence, the following occurred:

"Q. Before you left there, was there any conversation between yourself and Mr. Miller with regard to your operation? A. Yes. Mr. NIELSEN: Just a minute, I am going to move to strike the mention of the word ' "operation" ' . Q. Very well, with regard to the conduct performed there? A. Yes, I said, 'What did he do?' He said, 'He didn't do anything, but if it was me, I wouldn't have done it.' Mr. NIELSEN: Your Honor, I am going to move to strike that. We have had an awful lot of testimony regarding Miller improperly, when it wasn't in Kelsey's presence, but that is going too far."

■ The objection was that the statement was hearsay and not made in the presence of the appellant. The objection was not well taken. The evidence had established that Mr. Miller was an assistant to W. S. Kelsey and that the two had united for an illegal purpose, namely, to perform an operation when neither was qualified, under the law, so to do. In such an instance, the acts and admissions of one are admissible as against either of the accomplices in the crime. *State v. McGonigle,* 144 Wash. 252, 257, 258 Pac. 16 (1927).

Appellant next assigns as error an alleged improper comment on the evidence by the trial court. During the cross-examination of Mr. Miller, the prosecuting attorney objected to a question as being irrelevant. In answering the objection, the attorney for appellant stated that the testimony of the witness should not have much weight with the jury, as he intended "to show that he [Miller] doesn't know what he is talking about in regard to this instrument." The court then stated: "I wouldn't say that is a proper conclusion. He knows what he is talking about and wants to be fair about it."

■■ The statement was not prejudicial error for two reasons. First, the court, in instruction No. 37, specifically instructed the jury that the law forbids the court to comment on the evidence, and stated:

"I further charge you that if I have said anything during the course of the trial, or if in ruling on motions or objections I have made any statement which appears to you to be

a comment or opinion on the facts, or the weight or convincing effect of the testimony of any witness, . . . it is your duty to completely disregard it."

The jury is presumed to have followed the court's instructions. *State v. Weekly*, 41 Wn. (2d) 727, 729, 252 P. (2d) 246 (1952).

■ Second, the statement was made to counsel, not to the jury. At the time this statement was made by the court, counsel for appellant did not object to it, did not move to strike it, and did not ask that the jury be instructed to disregard it. He in no manner indicated to the court that he believed the statement to be prejudicial to his client. In the absence of a request for the court to withdraw the remark, or to caution the jurors against its possible influence upon them, appellant cannot now successfully claim error. *State v. Bengson,* 165 Wash. 612, 615, 5 P. (2d) 1040 (1931).

■ The appellant excepted to instruction No. 26, which defined the terms "drugs" or "medicinal preparation." The evidence disclosed that, in each of the counts upon which the appellant was convicted, where the actual severing of tissues was not the main issue and where drugs or medicinal preparations were prescribed, the drugs used were medicinal preparations, as that term is defined and generally understood. If the substances prescribed, recommended, or used by the appellant for his patients were not drugs, as defined by law, he had every opportunity to present such proof to the jury. This defense he failed to establish.

Further, the questioned instruction No. 26 followed the legal definition of the terms, "drugs" or "medicinal preparations," as approved by this court in *Kelly v. Carroll, supra.* The giving of the instruction was, therefore, proper.

We find no merit in appellant's remaining assignments of error.

The judgment and sentence appealed from is affirmed.

HAMLEY, C. J., SCHWELLENBACH, and DONWORTH, JJ., concur.

FINLEY, J. (dissenting)—In enacting statutes (a) providing for the licensing of practitioners in the several

branches of the healing arts, (b) prescribing the scope of professional practice of those licensed in the several branches, and (c) prohibiting practice of the healing arts by those not licensed, the legislature enacted separate and distinct statutes as to the licensing and the practice of medicine and surgery, and as to the licensing and the practice of drugless healing or sanipractic. In decisions construing the statutes, little mention has been made of the fact, but there is, to say the least, *some* overlapping in terms of professional activity permitted medical practitioners and sanipractors. Food and body chemistry, the prescribing of diets, is one example. Violations of the aforementioned statutes are made punishable as a misdemeanor. As to such violations, in *State v. Low*, 192 Wash. 631, 643, 74 P. (2d) 458, Steinert, C. J., pointed out:

"The crime charged is one that did not exist at common law, but is purely statutory. The state was therefore under the burden of *proving beyond a reasonable doubt that appellant was operating within the prohibition of the statute. State v. Carey*, 4 Wash. 424, 30 Pac. 729. The statute, being penal, is to be strictly construed. *State v. Eberhart*, 106 Wash. 222, 179 Pac. 853; *State v. Hart*, 136 Wash. 278, 239 Pac. 834; *State v. Herr*, 151 Wash. 623, 276 Pac. 870; *State v. Diebold*, 152 Wash. 68, 277 Pac. 394; 16 C. J. 1360, § 6." (Italics mine.)

RCW 18.71.010 [cf. Rem. Supp. 1947 § 10008] provides:

"The practice of medicine and surgery consists of the use of drugs or medicinal preparations in or upon human beings, severing or penetrating the tissues of human beings, and the use of any and all other methods in the treatment of diseases, injuries, deformities, or other physical or mental conditions."

RCW 18.71.020 [cf. Rem. Rev. Stat., § 10018] provides:

"Any person who practices or attempts to practice, or holds himself out as practicing medicine and surgery without having a valid, unrevoked certificate . . . shall be guilty of a misdemeanor. . . ."

RCW 18.36.010 [cf. Rem. Rev. Stat., § 10123] provides:

" 'Drugless therapeutics' consists of hydrotherapy, dietetics, electrotherapy, radiography, sanitation, suggestion,

mechanical and manual manipulation for the stimulation of physiological and psychological action to establish a normal condition of mind and body, but *in no way includes the giving, prescribing, or recommending of pharmaceutic drugs and poisons for internal use.*" (Italics mine.)

Obviously, one purpose of the first two above-quoted statutes is to prevent those unauthorized from practicing medicine and surgery. The purpose of the last-quoted statute is to permit those authorized in the field to practice drugless healing. I have italicized a portion of the last-quoted statute. It should be carefully noted that the italicized portion contains the term *pharmaceutic* and the term *internal.* In other words, the prohibition expressed by the legislature is limited in two respects. It is concerned (a) with *pharmaceutic* drugs and poisons, and (b) with the *internal* use of same. Inferentially, nonpharmaceutic drugs and poisons, and noninternal use are not verboten.

The language of the aforementioned statutes is general rather than specific and detailed. The practice of medicine and surgery, on the one hand, and the practice of drugless healing, are not carefully and meticuously defined. This is significant to me because it presents a problem of interpretation for the courts as to the meaning of the language employed in the statutes by our state legislature; that is, a problem as to the intent and purpose of the legislature in enacting the statutes. As indicated above, the statutes are criminal in nature, and the applicable rule of statutory interpretation requires that the statutes be interpreted strictly. *State v. Eberhart,* 106 Wash. 222, 179 Pac. 853, *State v. Diebold,* 152 Wash. 68, 277 Pac. 394.

In the instant case, the trial court instructed the jury as to the law. The question to be decided by the jury was twofold in aspect—whether the activities charged against the defendant sanipractor (a) constituted the practice of medicine or surgery, and (b) whether such activities were authorized by the drugless healing statute or went beyond or were outside of the scope of professional practice permitted for sanipractors in this state.

Basically, the prosecution contended that the defendant (a) administered drugs or medicinal preparations to human beings, and (b) severed or penetrated the tissues of human beings. In other words, that the activity of the defendant constituted the practice of (a) *medicine* and (b) *surgery* without a license, in violation of the statutes. The defense contended to the contrary and, furthermore, contended that the activities of the defendant sanipractor were within the scope of those he was permitted to perform under the drugless healing statute. Among other things, the defendant was charged with recommending, prescribing, and administering preparations, compounds, mineral, organic and chemical substances that are known and used as drugs. He was charged with severing and penetrating the tissues of human beings, in that he made rectal examinations of some patients, examined and manually manipulated and treated the female organs of other patients, and performed bladder irrigations. The trial court instructed the jury, and here on appeal we must remember and recognize the principle of law, that the charges against the defendant are not to be lumped together, but that each charge of illegal activity by the defendant must be tested separately against the applicable statutory provisions.

In this appeal, error is assigned to the trial court's instruction No. 26, which reads as follows:

"You are instructed that the words 'drugs' or 'medicinal preparation,' as it is before you for consideration in this case, means any substance or preparation used in treating diseases and the term includes patent or proprietary remedies possessing or reputing to possess curative remedial properties sold and used for medicines, irrespective of whether they contain poisonous ingredients or may be purchased without any direction from a physician or can be obtained at retail stores generally."

In commenting upon an instruction comparable to instruction No. 26, quoted above, Steinert, C. J., dissenting in *State v. Low, supra,* said:

"The court erred in giving the following instruction:

" 'The term "drug" shall include any substance or mixture of substances intended to be used for the cure, mitiga-

tion or prevention of disease of either man or other animals.'

"Rem. Rev. Stat., § 6145 [P. C. § 2536], defines drugs as follows:

" 'The term "drug," as used in this act, shall include all medicines and preparations recognized in the United States Pharmacopoeia or National Formulary for internal or external use, *and any substance or mixture of substances intended to be used for the cure, mitigation or prevention of disease of either man or other animals . . .*' (Italics mine.)

"In its instruction, the court limited itself to that part of the statute which I have italicized. By so doing, and without making any qualifications, the court gave the jury to understand that *any* substances or mixture of substances used as a cure or prevention of disease was to be considered as a drug. Reverting to what has already been suggested, the word 'drug' would then equally apply to any article of food or drink, no matter how innocuous it might be. Under that interpretation, anyone who should treat disease by a food diet or any form of drugless healing would be guilty of *practicing medicine*. I do not believe that any such construction is tenable."

I am convinced that instruction No. 26 was too broad and inclusive in scope, and that the giving of it constituted prejudicial error.

Before concluding, I wish to make the observation in passing that, here on appeal and apparently in the trial court, the state argued that the insertion of a catheter for the purpose of bladder irrigation, and the insertion of a dilator for vaginal and rectal examination constituted "severing or penetrating the tissues of human beings," in violation of the statutes. Such interpretation of the statutory language appears to me to be an extreme one. The legislative intent implicit in the words "severing or penetrating the tissues of human beings" prohibits the *performance of surgery*. In a sense, when either a catheter or a speculum is used in the manner indicated above, an opening in the human body is penetrated; but this in itself, and without anything further, is not surgery as I see it—that is, severing or penetrating the tissues of human beings. In connection with the problem of statutory interpretation here involved, definitions of the

term "penetration" pertinent to the legal concept of rape in the criminal law field are not particularly apt.

After hearing the testimony in this case, it might seem odd to a member of the jury, or for that matter to any layman, that defendant sanipractor Kelsey apparently examined and treated the female organs of most of the women patients involved in the criminal charges in this case. But the questions to be considered on this appeal are strictly legal ones, devoid of emotional or other overtones. Unquestionably, the state has a strong case, and upon a new trial the state again may prevail. However that may be, under our system of jurisprudence, every defendant is entitled to a fair trial and to the benefit of the presumption of innocence until guilt is established to the satisfaction of a jury beyond a reasonable doubt. Because of the views I have expressed regarding instruction No. 26, I feel that, as the saying goes, the defendant did not have his day in court, that he is entitled to a new trial, and an opportunity to defend himself against the state's charges, free from the adverse and prejudicial effects of instruction No. 26. The case should be reversed and remanded for the reasons and the purpose indicated hereinbefore.

---

August 4, 1955. Petition for rehearing denied.